Priority
Send          X
Enter         ___
Closed        ___
JS-5/JS-6     ___
JS-2/JS-3     ___
Scan Only     ___

FILED

FEB - 1 2001

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA TOLEDO, ET AL. | ) CV 99-07063 LGB (RCx) |
| | ) |
| Plaintiffs, | ) ORDER DENYING DEFENDANT |
| | ) OCHOA'S MOTION FOR SUMMARY |
| v. | ) JUDGMENT |
| | ) |
| HOUSING AUTHORITY FOR THE CITY OF | ) |
| LOS ANGELES, ET AL. | ) |
| | ) |
| Defendants. | ) |

## I.   INTRODUCTION

Defendant David Ochoa ("Defendant" or "Ochoa") brings a motion for summary judgment, on the grounds that Plaintiffs' evidence fails to raise a genuine issue of material fact that Defendant was a state actor, or that he conspired with state officials to violate Plaintiffs' constitutional rights.

## II.   FACTUAL BACKGROUND

Defendant David Ochoa was elected as President of the Resident Advisory Council ("RAC") for the Aliso Village housing project. See Statement of Uncontroverted Facts ("SUF") No. 1. The

ENTERED
FEB 1 2001
CV

1  Aliso Village RAC was formed pursuant to the policies of the

2  Housing Authority of the City of Los Angeles ("HACLA"), and is

3  subject to certain HACLA regulations. See SUF No. 2; Def.'s Ex. F

4  (HACLA Resident Participation Policy and Procedures).

5      One of Ochoa's responsibilities as President is to conduct

6  monthly RAC meetings. See SUF No. 3. The purpose of such meetings

7  is to disseminate information to Aliso Village residents, and to

8  enable residents to voice their concerns to Aliso Village

9  management. See id.; Def.'s Ex. C, Salgado Depo. at 74:1-4.

10     In or about January 1996, HACLA announced its decision to

11 demolish and rebuild Aliso Village. See Plaintiffs' Opposition at

12 2. The plan allegedly required all Aliso Village residents to

13 move out without any guarantees that they would be able to return

14 upon completion of the rebuilding. See Plaintiffs' Opposition at

15 2:20-27. The plan was purportedly met by some resistance from

16 Aliso Village residents. See id. at 3. Specifically, certain

17 Aliso Village residents created a group named Vecinos Unidos, for

18 the purposes of opposing the demolition plan. See Castellanos

19 Decl. ¶7; Toledo Decl. ¶2. The demolition plan purportedly became

20 a subject of discussion at the monthly RAC meetings. See

21 Plaintiffs' Opposition at 2.

22     Plaintiffs are residents of Aliso Village, and members of

23 Vecinos Unidos. See Plaintiff's Opposition at 2:10-12;

24 Castellanos Decl. ¶ 1,7; Toledo Decl. ¶ 1,2. Plaintiffs allege

25 that Defendant Ochoa attempted to suppress their speech in

26 opposition to the demolition plan, by giving them inadequate

27 notice of RAC meetings, denying residents copies of the notice of

28 RAC meetings, calling meetings at times when most residents would

1   be unable to attend, and manipulating the meetings. See

2   Plaintiff's Opposition at 3:8-12.

3        It is undisputed that at an April 9, 1999 RAC meeting,

4   Plaintiff Toledo was arrested by HACLA Officer Salgado. See SUF

5   No. 6; Toledo Decl. ¶3. It is also undisputed that at a June 11,

6   1999 RAC meeting, Plaintiff Castellanos was arrested by HACLA

7   Officer Macias. See SUF No. 8; Castellanos Decl. ¶ 2. Plaintiff

8   Torres also contends that she was assaulted and arrested by HACLA

9   officer Salgado at the April 9, 1999 RAC meeting. See Torres

10  Depo. at 42-244. Plaintiffs contend that the foregoing arrests

11  and mistreatment occurred at the behest of Ochoa, and in response

12  to their vocal opposition of the demolition plan. See Toledo

13  Decl. ¶ 4; Castellanos Decl. ¶3-4. Defendant Ochoa maintains that

14  at no time prior to, or during, the aforementioned RAC meetings

15  did he agree with any HACLA official to either suppress speech in

16  opposition to the demolition plan, or to arrest Plaintiffs. See

17  Macias Depo. at 56:21-23; 80:9-17. Rather, Defendant contends

18  that Plaintiffs were arrested because they were disruptive, and

19  refused to allow scheduled speakers to make their presentations.

20  See Def.'s Ex. B, Gonzalez Depo. at 31:12-23; 43:17-23; Ex. E,

21  Macias Depo. at 39:7-22.

22

23  **III. PROCEDURAL BACKGROUND**

24       Plaintiffs filed their original complaint on July 12, 1999.

25  Thereafter, on September 15, 1999, Plaintiffs filed a First

26  Amended Complaint ("1AC"), naming as defendants David Ochoa,

27  HACLA, Dina Gonzalez, and HACLA Police Officers Salgado, Macias,

28  Gutierrez, and Harris. The 1AC asserts that Defendants violated

Plaintiffs' civil rights under 42 U.S.C. § 1983. Specifically, the 1AC alleges that Defendants violated their First and Fourth Amendment rights by suppressing their speech in opposition to the demolition plan, and subjecting them to unreasonable searches and seizures during the RAC meetings.

Defendants Housing Authority, Gonzales, and Officers Salgado, Gutierrez, Macias, and Harris filed a Joint Answer on October 4, 1999. Also on October 4, 1999, Defendant Gonzales filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12 (b)(6). On October 12, 1999, Defendant Ochoa filed his Answer and a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12 (b)(6). The Court denied Ochoa's and Gonzales' motions to dismiss by Orders dated November 1, 1999 and December 27, 1999, respectively.

Defendant Ochoa filed the instant motion for summary judgment on December 15, 2000. Plaintiffs Torres and Castellanos filed an opposition, which is joined by Plaintiffs Toledo and Montenegro, on December 26, 2000. Ochoa filed a reply on January 2, 2001.[1]

In his motion, Ochoa contends that his conduct is not actionable under section 1983 because he is neither a state actor, nor did he conspire with any state actors to violate Plaintiffs' constitutional rights.

---

[1] Also pending before the Court are (1) Defendant Gutierrez's motion for summary judgment, or in the alternative for partial summary judgment; and (2) Defendant HACLA's motion for summary judgment. The Court will address these motions in separate Orders.

## IV.  SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides
that a court shall grant a motion for summary judgment if "the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c). Material facts are those that may affect
the outcome of the case. See Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 248 (1986). A dispute as to a material fact is
genuine if there is sufficient evidence for a reasonable jury to
return a verdict for the nonmoving party. See id.

The party moving for summary judgment bears the initial
burden of informing the district court of the basis of the
summary judgment motion, and of demonstrating the absence of a
genuine issue of material fact for trial.  See Celotex Corp. v.
Catrett, 477 U.S. 317, 323 (1986); Katz v. Children's Hosp of
Orange County, 28 F 3d 1520, 1534 (9th Cir. 1994). On an issue
for which the nonmoving party has the burden of proof at trial,
the moving party need only point out "that there is an absence of
evidence to support the nonmoving party's case."  Celotex, 477
U.S. at 325.

Once this initial burden is satisfied, the non-moving party
is required to "go beyond the pleadings and by her own
affidavits, or by the depositions, answers to interrogatories,
and admissions on file, designate 'specific facts' showing that
there is a genuine issue for trial." Celotex, 477 U.S. at 324
(internal quotations omitted). See also Nilsson, Robbins,

1  Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec, 854 F.
2  2d 1538, 1544 (9th Cir. 1988). Where the standard of proof at
3  trial is preponderance of the evidence, the non-moving party's
4  evidence must be such that a "fair-minded jury could return a
5  verdict for the [non-moving party] on the evidence presented."
6  Anderson, 477 U.S. at 252.

7

8  **V.   ANALYSIS**

9      Defendant argues that Plaintiffs' evidence fails to raise a
10 genuine issue of material fact as to whether he was a state
11 actor, as required to impose liability under section 1983.
12 Defendant also argues that Plaintiffs' evidence fails to raise a
13 genuine issue of material fact as to whether Defendant conspired
14 with state actors in order to violate Plaintiffs' constitutional
15 rights. See Defendant's Motion at 4-10. The Court will consider
16 each contention in turn.

17

18    **A.   WHETHER DEFENDANT OCHOA IS A STATE ACTOR**

19      Section 1983 provides a federal cause of action against any
20 person who, acting under color of state law, deprives another of
21 his federal rights. See §42 U.S.C. 1983.  To act "under color of"
22 state law presupposes the existence of some action by the state.
23 See Morse v. North Coast Opportunities, Inc., 118 F.3d 1338, 1340
24 (9th Cir. 1987). As such, a plaintiff must show that the actions
25 complained of are "fairly attributable" to the state government.
26 See id. See also NCAA v. Tarkanian, 488 U.S. 179, 191 (1988)
27 (section 1983 liability "attaches only to those wrongdoers 'who
28 carry a badge of authority of a State and represent it in some

1  capacity . . .")(quoting <u>Monroe v. Pape</u>, 365 U.S. 167, 172

2  (1961)).

3      Here, Defendant Ochoa argues that he is not a state actor

4  because the Resident Advisory Council ("RAC"), of which he is

5  president, is not a state organization. <u>See</u> Defendant's Motion at

6  5. As such, any action taken by Defendant as the RAC president is

7  not "fairly attributable" to the government, as required by

8  section 1983. Plaintiffs do not appear to dispute Defendants'

9  characterization of the RAC as a private organization. Neither

10  Plaintiffs' opposition brief nor their Statement of Genuine

11  Issues even addresses Defendants' contention. Rather, the

12  arguments and evidence contained therein are devoted to the

13  alternative bases for finding state action, the existence of a

14  conspiracy between Ochoa and HACLA state officials, which is

15  discussed more fully <i>infra</i>. As such, the Court concludes that

16  Plaintiffs fail to raise a genuine issue of material fact as to

17  whether Defendant Ochoa's conduct as RAC President was fairly

18  attributable to the state.

19

20      **B.    CONSPIRACY BETWEEN DEFENDANT OCHOA AND STATE ACTORS**

21          **(1) <u>Legal Standard</u>**

22      Section 1983 provides a federal cause of action against any

23  pers on who, acting under color of state law, deprives another of

24  his federal rights. <u>See</u> §42 U.S.C. 1983. Private parties "act

25  under color of state law if they wilfully participate in joint

26  action with state officials to deprive others of constitutional

27  rights." <u>United Steelworkers of America v. Phelps Dodge Corp.</u>,

28  865 F.2d 1539, 1540 (9th Cir. 1989). <u>See</u> <u>also</u> <u>Fonda v. Gray</u>, 707

1   F.2d 435, 437 (9th Cir. 1983)("A private party may be considered
2   to have acted under color of state law when it engages in a
3   conspiracy or acts in concert with state agents to deprive one's
4   constitutional rights.")

5        To establish a defendant's liability for a conspiracy, the
6   plaintiff must demonstrate the existence of "an agreement or
7   'meeting of the minds' to violate constitutional rights." Id.
8   Each participant in the conspiracy "need not know the exact
9   details of the plan, but each participant must at least share the
10  common objective of the conspiracy." Phelps Dodge, 865 F.2d at
11  1541; Gilbrook v. City of Westminster, 177 F.3d 839, 856 (9th
12  Cir.1999)(The defendant must, "by some concerted action, intend
13  to accomplish some unlawful objective for the purpose of harming
14  another which results in damage.")

15       The agreement "need not be overt, and may be inferred on the
16  basis of circumstantial evidence such as the actions of the
17  defendants." Mendocino Environmental Ctr. v. Mendocino County,
18  192 F.3d 1283, 1301 (9th Cir. 1999).  A showing that "the alleged
19  conspirators have committed acts that 'are unlikely to have been
20  undertaken without an agreement' may allow a jury to infer the
21  existence of a conspiracy." Id. (quoting Kunik v. Racine County,
22  946 F.2d 1574, 1580 (7th Cir.1991)).

23       Whether a defendant was involved in an unlawful conspiracy
24  "is generally a factual issue and should be resolved by the jury,
25  'so long as there is a possibility that the jury can infer from
26  the circumstances (that the alleged conspirators) had a 'meeting
27  of the minds' and thus reached a understanding to achieve the
28  conspiracy's objectives.'" Id. (quoting Hampton v. Hanrahan, 600

8

1  F.2d 600, 621 (7th Cir.1979)).

2      Here, the Court must determine whether the evidence raises a

3  genuine issue of material fact as to the existence of a

4  conspiracy between Defendant Ochoa and HACLA state officials to

5  violate Plaintiffs' constitutional rights.

6

7          **(2) Analysis**

8      Plaintiffs provide various items of evidence supporting the

9  existence of an agreement between Defendant Ochoa and Don Smith,

10  the director of HACLA, to silence those residents of Aliso

11  Village that were opposed to the demolition plan. First,

12  Plaintiff Castellanos contends that, "[o]n several occasions I

13  heard David Ochoa state that he had orders from Don Smith,

14  Director of HACLA, to kick out of Aliso Village, at all costs,

15  the members of Vecinos Unidos, because we were opposed to the

16  demolition plan." Castellanos Decl. ¶ 8.[2] Second, Ochoa has

17  purportedly admitted that he accepted HACLA money from Don Smith

18  in order to pay supporters of the demolition plan to attend RAC

19  meetings and voice their support. See Castellanos Decl. ¶ 9

20  (Several residents claimed that Ochoa "paid them money for

21  attending the meetings and speaking out in favor of the

22  demolition plan. . . Other members of Vecinos Unidos and myself

23  asked David Ochoa several times whether that was true and Ochoa

24

25  _____

26  [2] Defendants object to the foregoing evidence on the grounds that
    it constitutes inadmissible hearsay. The Court hereby overrules

27  this objection, because Ochoa's statement constitutes a non-hearsay
    admission by a party-opponent under Federal Rule of Evidence

28  801(d)(2)(A).

1  stated that it was true. That Don Smith provided that money to
2  pay those people because he wanted to kick us out at all
3  costs").[3]

4      Third, Plaintiffs provide evidence that Ochoa publicly cited
5  in a flier the name of every Aliso Village resident who signed a
6  petition in opposition to the demolition plan. See Pl.'s Ex. B,
7  Vilchis Depo. at 75:5-12. The evidence is significant because the
8  residents' petition was addressed only to HUD and HACLA, and
9  apparently was not sent to any RAC officer. See id. at 75:13-25.
10 As such, Plaintiffs contend that the only way in which Ochoa
11 could have gained access to the residents' names is if HACLA had
12 provided them to him. See id. at 75:13-19.[4] This evidence raises
13 a genuine issue of material fact as to whether Ochoa and HACLA
14 were acting in concert to suppress speech in opposition to the
15 demolition plan.[5]

16     Occurrences at the April and June RAC meetings raise further
17

18 [3] Defendants once again object on hearsay grounds to the foregoing
19 evidence concerning Ochoa's statement. The Court overrules the
   objection and finds the statement admissible as a non-hearsay
20 admission by a party-opponent.

21 [4] Leonardo Vilchis, an Aliso Village resident and member of Vecinos
   Unidos, testified as follows: "But [Ochoa] could only get those
22 names from the Housing Authority. There is no way he could have
   gotten those names anywhere else. The Housing -- the letter was
23 addressed to HUD, with a copy to the Housing Authority. For David
   to -- Ochoa to have those names, the Housing Authority had to
24 provide them for him." Vilchis Depo. at 75:13-19.
25
26 [5] Plaintiff Torres further contends that Officer Salgado informed her
   that he was acting under orders from David Ochoa to silence
27 Plaintiff Toledo. See Torres Depo. at 36:7-14. The Court grants
   Defendants' objection to the admissibility of this evidence, on the
28 grounds that it constitutes inadmissible hearsay.

1  issues of material fact as to the existence of an agreement to

2  silence and arrest residents that opposed the demolition plan.

3      First, at the meeting of April 9, 1999, Plaintiff Toledo

4  asserts that when she stood up to voice her opposition to the

5  demolition plan, Ochoa threatened to have her arrested, and

6  ordered a HACLA officer to take away certain papers that were in

7  her possession. See Toledo Decl. ¶ 3. Thereafter, HACLA Officer

8  Salgado purportedly complied with Ochoa's orders. See id.[6] See

9  also Pl.'s Ex. A, Torres Depo. at 40:19-23 ("Q: Did you observe

10 anybody order Officer Salgado to take the papers from Julia? A:

11 Yes. Q: Who? A: David Ochoa.") Defendant disputes that any such

12 orders were given. See Def.'s Ex. C, Salgado Depo. at 97:11-14.

13 The Court finds that the HACLA officer's purported compliance

14 with Ochoa's order to seize Toledo's papers raises a genuine

15 issue of material fact as to the existence of an agreement

16 between Ochoa and HACLA officials to silence speech in opposition

17 to the demolition plan, and to arrest persons that expressed such

18 opposition.

19     Second, at the June 11, 1999 meeting, Plaintiff Castellanos

20 contends that Ochoa signaled to HACLA police officers while

21 Castellanos was speaking, in apparent response to which two

22 officers approached her, and purportedly threw her at a soda

23 machine. See Castellanos Decl. ¶ 4; ¶5. The evidence provides

24 _____

25 [6] Toledo's declaration states that, when she stood up to speak:

26 "Ochoa told me that if I continued messing around he would
   have me arrested. . . . Ochoa told an officer to take my papers and

27 the officer approached me and demanded the papers. I refused to
   give them to him. Ochoa then yelled at me: '. . . Shut up or I will

28 have you arrested." See Toledo Decl. ¶3.

11

1  further support for Plaintiffs' contention that Ochoa and HACLA

2  officials were acting pursuant to a common plan to suppress

3  speech in opposition to the demolition plan.

4      Moreover, Plaintiffs provide evidence that police officers,

5  accompanied by security dogs, blocked residents' entry into the

6  June 11, 1999 meeting, and discriminatorily demanded

7  identification from only those residents who were opposed to the

8  demolition plan. See  Castellanos Decl. ¶7; Toledo Decl. ¶5.[7]

9  Contrary to Defendant's argument that this evidence is

10 irrelevant, the Court finds that it raises a genuine issue of

11 material fact as to the existence of a common plan between Ochoa

12 and HACLA officers, in light of Defendant's admission that he is

13 solely responsible for the manner in which RAC meetings are

14 conducted. See Def.'s Ex. A, Ochoa Depo. at 97:8-17; SUF No. 1.

15 Given Ochoa's authority over the administration of RAC meetings,

16 a reasonable jury could find that the HACLA officers' alleged

17 discrimination in permitting entry into the June 11, 1999 meeting

18 was the product of a common agreement between Ochoa and HACLA.

19     "A claim of conspiracy, being dependent on questions of

20 intent, may not always be amenable to disposition on summary

21

_____

22 [7]Castellanos' declarations states:

23     "When I arrived at the meeting, I noticed that the parking lot
   gates were closed and some of the persons attempting to enter,
24 including myself, were asked to show identification, . . . , and if
   we did not show it, we would not be allowed in. However, persons
25 who were brought to the meeting by David Ochoa were allowed to
   enter the meeting without showing proof of residence in Aliso
26 village. . . Among the persons excluded from the meeting were
   Elizabeth Blaney and Leonardo Vilches, who were organizers of
27 Vecinos Unidos."

28 See Castellanos Decl. ¶7.

judgment." <u>Fonda</u>, 707 F.2d at 438. The foregoing direct evidence of Ochoa's purported agreement with Smith, and the circumstantial evidence of concerted action with HACLA Officers at the RAC meetings, raises a genuine issue of material fact as to whether Ochoa and HACLA officials conspired in order to deprive Plaintiffs of their constitutional rights.[8] As such, genuine issues of material fact remain as to whether Ochoa was acting "under color of law," for the purposes of section 1983 liability.

**VI.   CONCLUSION**

For the foregoing reasons, the Court **DENIES** Defendant Ochoa's motion for summary judgment.

**IT IS SO ORDERED.**

Dated: *January 31, 2001*

**LOURDES G. BAIRD**
**United States District Judge**

---

[8] At oral argument, Defendant argued that Plaintiffs' entirely circumstantial evidence failed to discharge their burden of showing a conspiracy under <u>American Ad Management, Inc. v. GTE Corp.</u>, 92 F.3d 781 (9th Cir. 1996) and <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986). Defendant's argument fails for two reasons. First, in addition to circumstantial evidence, Plaintiff produced direct evidence of a conspiracy, in the form of statements by Ochoa as to his agreement with Don Smith. <u>See</u> Castellanos Decl. ¶¶ 8-9. Second, <u>American Ad Management</u> and <u>Matsushita</u> concern the burden-shifting standard employed by courts in assessing the existence of a conspiracy in the anti-trust context. <u>See</u> <u>T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc.</u>, 809 F.2d 626, 632 (9th Cir. 1987). The cases are entirely inapposite to the section 1983 conspiracy alleged in the instant action.

13